**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **ROBERT GILBERT,** ) | |
| **#B-35431,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case No. 15-cv-00288-MJR** |
| ) | |
| **AFSCME COUNSEL[1] 31, LOVELL,** ) | |
| **ROBERT PATTERSON, STIEBLER,** ) | |
| **MARC HODGE, RANDY STEVENSON,** ) | |
| **SANDRA FUNK, DALLAS, COOPER,** ) | |
| **C/O MOLENHOUR, MOORE, DUNCAN,** ) | |
| **WHEELER, HENRY BAYER,** ) | |
| **NEWMULLER, JAMES BERRY,** ) | |
| **and UNKNOWN PARTY,** ) | |
| ) | |
| **Defendants.** ) | |

## MEMORANDUM AND ORDER

**REAGAN, Chief Judge:**

Plaintiff Robert Gilbert, a prisoner who is currently incarcerated at Pontiac Correctional Center ("Pontiac"), brings this civil rights action pursuant to 42 U.S.C. § 1983 (Doc. 1). In the complaint, Plaintiff claims that he was wrongfully transferred to Lawrence Correctional Center ("Lawrence"), where he had known enemies. When he complained by filing grievances and a lawsuit, Lawrence officials retaliated against him by assaulting him, issuing him a false disciplinary ticket, and placing him in segregation. Plaintiff now sues twenty-four officials for depriving him of his rights under the First, Sixth, Eighth, and Fourteenth Amendments. He seeks monetary damages, release from prison, release from segregation, a prison transfer, enrollment in auto body and barbering courses, corrective spinal surgery, a pair of white Air Jordan shoes, a

---

[1] Although the complaint lists this defendant's name as "AFSCME Counsel 31," the proper spelling is "AFSCME Council 31." Therefore, the Court will refer to this defendant as "AFSCME Council 31" throughout this order.

pair of Koss CL 20 headphones, a Walkman, and the right to order cassette tapes (Doc. 1, p. 17). Plaintiff has also filed two related motions for emergency injunctive relief (Docs. 2, 7).

## **Merits Review Pursuant to 28 U.S.C. § 1915A**

The complaint is subject to review pursuant to 28 U.S.C. § 1915A(a).  Under Section 1915A, the Court is required to promptly screen prisoner complaints to filter out nonmeritorious claims.  28 U.S.C. § 1915A(a).  The Court is required to dismiss any portion of the amended complaint that is legally frivolous, malicious, fails to state a claim upon which relief may be granted, or asks for money damages from a defendant who by law is immune from such relief. Although some of Plaintiff's claims are subject to dismissal, the complaint survives preliminary review under Section 1915A.

## **The Complaint**

According to the complaint, Plaintiff was wrongfully transferred to Lawrence Correctional Center ("Lawrence") after notifying several Illinois Department of Corrections ("IDOC") officials that he had known enemies there (Doc. 1, pp. 5, 7).  These IDOC officials included Defendants Patterson, Funk, and Stevenson.

After his transfer, Plaintiff was subjected to the following retaliatory acts, among others that are discussed in more detail below: (1) Defendant Dallas placed him in an "ice cold" cell in the health care unit for a month because Plaintiff is litigious (Doc. 1, p. 7); (2) Defendant Molenhour did not allow Plaintiff into the prison's school (Doc. 1, p. 7); and (3) Plaintiff was placed near Defendant Berry, who was known to target litigious inmates for assaults and false disciplinary tickets (Doc. 1, pp. 7-8).

Plaintiff notified Defendants Hodge, Lovell, Molenhour, and Jane/John Does ##1 and 2 that he was in imminent danger (Doc. 1, p. 7). He requested an investigation of his enemies. Defendant Berry was allegedly assigned to the investigation.

On January 12, 2015, Defendant Berry approached Plaintiff, saying, "You are the law suit guy everyone is talking about" (Doc. 1, p. 8). When Plaintiff asked to speak with a lieutenant, Defendant Berry placed Plaintiff in handcuffs so tightly that it caused permanent nerve damage in his left hand, as well as deep cuts and gashes. Defendant Berry then took Plaintiff to the shower. Once there, he "grabbed" Plaintiff. When Plaintiff pulled away, Defendant Berry called a false "Code 1" for a staff assault.

Defendants Dallas, Freeman, and Stiebler responded. These defendants allegedly "gave Plaintiff to officers [John Does ##3, 4, 5, and 6,] stating hes a suer (sic)" (Doc. 1, p. 8). Defendants John Does ##3, 4, 5, and 6 grabbed Plaintiff by his hands and feet to carry him to segregation. As they carried him, Defendant John Doe #3 "kneed [Plaintiff] in the face approximately eight times." Defendants John Does ##4, 5, 6, and 7 threw Plaintiff down onto his back (Doc. 1, p. 8). They neglected to remove his handcuffs for nearly twenty minutes after he arrived in segregation. As a result of this incident, Plaintiff suffered from excessive facial swelling, loose teeth, a black eye, dizziness, blurred vision, migraines, nerve damage in his left hand, cuts to both wrists, and a broken vertebra (Doc. 1, pp. 8-9).

Plaintiff was issued a false disciplinary ticket for a staff assault based on an incident report that Defendant Berry wrote, after Plaintiff reported him for assault (Doc. 1, p. 8). Defendants Molenhour, Wheeler, and/or Freeman[2] failed to properly investigate the matter and

---

[2] Sometimes the complaint refers to Defendants Molenhour and Wheeler in connection with this investigation (Doc. 1. p. 9). At other times, the pleading refers to Defendants Molenhour and Freeman (Doc. 1, pp. 15-16). Because it is not clear who was involved in the investigation, the Court refers to all three in connection with it.

obtained a coerced statement from Plaintiff, after withholding medical treatment for his injuries until they were "satisfied with what they want[ed] to hear" (Doc. 1, p. 9). Even after obtaining a coerced statement from him, they denied him medical care. Plaintiff had to direct his request for treatment to another officer.

Defendants Cooper and Wheeler found Plaintiff guilty of the staff assault, following an unfair disciplinary hearing. Prior to the hearing, Defendant Cooper approached Plaintiff in his cell and said, "I don't like inmates who assault my co-workers[,] so Im (sic) going to nail you on that staff assault ticket" (Doc. 1, p. 9). Defendant Cooper then issued him a separate disciplinary ticket for an undisclosed rule violation and failed to provide Plaintiff with proper notice of the staff assault ticket. Defendants Wheeler and Cooper denied Plaintiff's request to cross-examine his accusers (i.e., Defendants Berry and Neumuller). Plaintiff was found guilty of the rule violation based on his coerced statement and the statement of Defendant Neumuller (Doc. 1, p. 9). He was sentenced to the maximum term in segregation as punishment (Doc. 1). The complaint does not describe the conditions Plaintiff faced in segregation.[3]

However, Plaintiff does allege that Defendants Moore and Duncan have a custom, policy, or practice of allowing low ranking officers to escort inmates to segregation. This allegedly results in torture. The only concrete example provided in support of this allegation is that Defendants John Does ##3 and 4 have a practice of exerting pressure on an inmate's head as he walks to segregation, causing him to suffer weakness in his legs and faint.

Finally, Plaintiff names Defendant Baylor and the Association of Federal, State, County and Municipal Employees Council 31 ("AFSCME Council 31") for violating Plaintiff's Eighth

---

[3] The complaint includes no copy of the disciplinary ticket, although it appears that Plaintiff may have intended to include it as "Exhibit C." Page 6 of the complaint is missing or renumbered. The Court has not dismissed any claim based on the absence of this document.

Amendment rights because they know that certain policies and practices at Lawrence cause physical harm to inmates (Doc. 1, p. 9).

**<u>Discussion</u>**

**A.      Summary of Claims**

The *pro se* complaint lists seventeen counts against twenty-four defendants.  Many of these counts include multiple claims that are not easily addressed together, while other counts can be consolidated for purposes of this discussion.  Therefore, the Court finds it convenient to organize the discussion of the complaint into twelve counts, which are generally consistent with Plaintiff's designation of these claims in the complaint.  The parties and the Court will use these designations in all future pleadings and orders, unless otherwise directed by a judicial officer of this Court.

**COUNT 1:**   Defendants Patterson, Funk, and Stevenson failed to protect Plaintiff from known enemies when they transferred him to Lawrence, in violation of the Eighth Amendment (Doc. 1, p. 10; *see* Counts 1 and 2 in the complaint);

**COUNT 2:**   Defendants Hodge, Lovell, Molenhour, and Jane/John Does ##1 and 2 failed to protect Plaintiff from harm when they assigned Defendant Berry the task of investigating Plaintiff's complaints of imminent danger posed by known enemies, in violation of the Eighth Amendment (Doc. 1, pp. 10-11; *see* Count 3[4] in the complaint);

**COUNT 3:**   Defendant Molenhour retaliated against Plaintiff by denying his request to attend school, in violation of the First Amendment (Doc. 1, p. 7);

**COUNT 4:**   Defendant Dallas retaliated against Plaintiff for filing lawsuits by placing him in an "ice cold" cell for a month after saying "we have something for suers," in violation of the First and Eighth Amendments (Doc. 1, pp. 11, 13; *see* Counts 4 and 9 in the complaint);

---

[4] "Count 3" in the complaint covers several additional claims, which the Court will address in the context of other "Counts" herein.

**COUNT 5:**    In retaliation for being litigious, Plaintiff was placed in a cell near Defendant Berry, an officer who is known to target such inmates for retaliation, in violation of the First Amendment (Doc. 1, p. 7);

**COUNT 6:**    Defendant Berry retaliated against Plaintiff for being litigious by handcuffing him too tightly, grabbing him, calling a false "Code 1," and preparing a false incident report in support of a disciplinary ticket for staff assault, in violation of the First and Eighth Amendments (Doc. 1, pp. 8-9, 11, 14; *see* Counts 5 and 11 in the complaint);

**COUNT 7:**    Defendants Stiebler, Dallas, and Freeman retaliated against Plaintiff and failed to protect him when they responded to the "Code 1" by handing him over to prison officials who assaulted Plaintiff, in violation of the First and Eighth Amendments (Doc. 1, p. 12; *see* Count 6 in the complaint);

**COUNT 8:**    Defendants John Does ##3, 4, 5, 6, and 7 used excessive force against Plaintiff or failed to protect him, by kneeing him in the face eight times, holding his head down in a manner that caused muscle weakness and/or fainting, dragging him on his knees, throwing him onto his back, and failing to remove his handcuffs in the process of transporting him to segregation, in violation of the Eighth Amendment (Doc. 1, p. 12; *see* Count 7 in the complaint);

**COUNT 9:**    Defendants Moore and Duncan have a custom, policy, or practice of allowing low ranking officers to walk inmates to segregation (Doc. 1, p. 13; *see* Count 8 in the complaint);

**COUNT 10:**    Defendants Molenhour, Wheeler, Freeman, and John Does ##3, 4, 5, 6, and 7 exhibited deliberate indifference to Plaintiff's medical needs by denying him medical care for the injuries that he sustained during the "Code 1" (Doc. 1, pp. 8, 12-13, 15; *see* Counts 7, 10, and 14 in the complaint);

**COUNT 11:**    Defendants Cooper, Wheeler, Mohlenhour and Freeman  retaliated against Plaintiff under the First Amendment, denied him due process of law under the Fourteenth Amendment, and denied him the right to confront his accusers under the Sixth Amendment in connection with the issuance of a disciplinary ticket for staff assault, the investigation of the same, and the unfair disciplinary hearing that resulted in the maximum punishment for the offense (Doc. 1, pp. 10-11, 13-16; *see* Counts 12, 13, 14, 15, and 16 in the complaint); and

**COUNT 12:**  Defendants AFSCME Council 31 and Baylor violated Plaintiff's rights under the Eighth Amendment because they "knew" that the policies and practices at Lawrence caused physical harm to inmates (Doc. 1, pp. 9, 16; *see* Count 17 in the complaint).

**B.     Claims Subject to Further Review**

After carefully considering the allegations, the Court finds that the complaint states the following colorable claims: **Counts 4, 6, 7, 8, 10** and **11 (First and Fourteenth Amendment claims)**.  Accordingly, Plaintiff shall be allowed to proceed with these claims against those defendants who are listed in connection with each, i.e., Count 4 against Dallas, Count 6 against Berry, Count 7 against Stiebler, Dallas, and Freeman, Count 8 against John Does ##3-7, Count 10 against Molenhour, Wheeler, Freeman, and John Does ##3-7, and Count 11 against Cooper, Wheeler, Molenhour, and Freeman.  These counts shall be dismissed against all other defendants without prejudice.

**C.     Claims Subject to Dismissal**

The complaint fails to articulate viable claims against any of the defendants under **Counts 1, 2, 3, 5, 9, 11 (Sixth Amendment claim),** and **12**.  As discussed in greater detail below, each of these counts shall be dismissed.  Further, any claims mentioned or alluded to in the complaint that are not addressed in this order should be considered dismissed without prejudice.

### Count 1 – Wrongful Transfer

The allegations offered in support of Plaintiff's wrongful transfer claim (**Count 1**) against Defendants Patterson, Funk, and Stevenson do not state a claim upon which relief may be granted, even at this early stage (Doc. 1, p. 10; *see* Counts 1 and 2 in the complaint).  Plaintiff alleges the following:

> Before Plaintiff was transferred to Lawrence CC Robert Patterson knew Plaintiff was in imminent harm upon pre-notification from Plaintiff.  Patterson sent Plaintiff to Lawrence despite his notification.  Patterson, Funk, and Stevenson knew of retaliation on lawsuit litigants which Plaintiff described in his notification but agreed to send and keep Plaintiff at Lawrence.

(Doc. 1, p. 7).  Along with the complaint, Plaintiff filed a counseling summary created by Defendant Patterson on September 3, 2013, which states, ". . . In addition, you request that you not be sent to the Lawrence C.C. because you previously filed a lawsuit against an employee at that facility" (Doc. 1, p. 5).  On this basis, Plaintiff raises a failure to protect claim against Defendants Patterson, Funk, and Stevenson for transferring him to a prison where he has "known enemies."[5]

The United States Supreme Court has long recognized that the Constitution does not guarantee placement in any particular prison.  *See Meachum v. Fano*, 427 U.S. 215, 224 (1976).  This is because "prisoners possess neither liberty nor property in their classifications and prison assignments.  States may move their charges to any prison in the system." *DeTomaso v. McGinnis*, 970 F.2d 211, 212 (7th Cir. 1992) (citing *Montanye v. Haymes*, 427 U.S. 236 (1976)).  But Plaintiff is not just complaining about his transfer to a different prison.  He challenges his transfer to a more dangerous prison, i.e., one that houses his known enemies and is known for retaliating against inmates who file lawsuits.  He brings this claim under the Eighth Amendment.

The Eighth Amendment protects prisoners from cruel and unusual punishment.  U.S. Const., amend. VIII.  These protections extend to the conditions of a prisoner's confinement, including those conditions that pose a substantial risk of serious harm to the inmate's health and safety.  *See Estate of Miller, ex rel. Bertram v. Tobiasz*, 680 F.3d 984 (7th Cir. 2012).  The Seventh Circuit has made it clear that prison officials have a duty to protect

---

[5]  Plaintiff does not identify these known enemies.  It is therefore unclear whether they are prison officials or inmates.

prisoners "from violence at the hands of other inmates." *See Washington v. LaPorte County Sheriff's Dep't*, 306 F.3d 515, 517 (7th Cir. 2002). They also have a duty to protect prisoners from the unlawful use of excessive force by prison officials. However, a prison official may be liable "only if he knows that inmate faces a substantial risk of serious harm and disregards that risk by failing to take reasonable measures to abate it." *Farmer v. Brennan*, 511 U.S. 825, 847 (1994). The prison official must act with the equivalent state of mind of criminal recklessness. *Farmer*, 511 U.S. at 836-37. A defendant can never be held liable under Section 1983 for negligence, or even gross negligence. *Gomez v. Randle*, 680 F.3d 859, 864 (7th Cir. 2012). More is required. *Farmer*, 511 U.S. at 835.

The allegations in the complaint do not suggest that Defendants Patterson, Funk, or Stevenson acted with criminal recklessness, i.e., deliberate indifference, in conjunction with Plaintiff's transfer. Plaintiff only alleges that, based on a 2013 counseling summary, Defendant Patterson "knew" at one time of his request not to be transferred to Lawrence because Plaintiff previously filed a lawsuit against one of its officials (Doc. 1, pp. 5, 7). The complaint does not suggest that Defendants Funk or Stevenson had this same knowledge.

More to the point, notice of this request, standing alone, does not give rise to an Eighth Amendment failure to protect claim against these defendants. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005). The complaint does not allege that these individuals were responsible for the decision to transfer Plaintiff to Lawrence or even *aware* of his impending transfer to Lawrence.

Further, the doctrine of *respondeat superior* does not apply to actions filed under

Section 1983. *See, e.g., Kinslow v. Pullara*, 538 F.3d 687, 692 (7th Cir. 2008). Therefore, these defendants cannot be held liable based on their supervisory roles within the prison system. And although the doctrine of *respondeat superior* is not applicable to Section 1983 actions, "[s]upervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it." *Lanigan v. Village of East Hazel Crest, Ill.*, 110 F.3d 467, 477 (7th Cir. 1997). *See also Doyle v. Camelot Care Centers, Inc.,* 305 F.3d 603, 615 (7th Cir. 2002). The complaint contains no suggestion that these defendants had knowledge of the transfer, approved the transfer, or the basis for it. Without more, **Count 1** against Defendants Patterson, Funk, and Stevenson must be dismissed without prejudice for failure to state a claim upon which relief may be granted.

### Count 2 –Assignment of Defendant Berry to Investigation of Known Enemies

The complaint lacks sufficient allegations to support a First Amendment retaliation claim or an Eighth Amendment failure to protect claim against Defendants Hodge, Lovell, Molenhour, and Jane/John Does ##1 and 2 (**Count 2**) (Doc. 1, pp. 10-11; *see* Count 3 in the complaint). The sum and substance of the allegations offered in support of this claim are as follows:

> Plaintiff gave notice while in Lawrence of his imminent harm to Hodge, Lovell, Jane/John Doe #1, Molenhour but Plaintiffs request to have his enemy's investigated due to the enemies were Berry known to retaliate on Plaintiffs who file law suits. Hodge, Lovell, Jane/John Doe #1, 2, Molenhour's failure to remove Planitiff from Lawrence C.C. contributed and attributed to Plaintiffs physical harm.

(Doc. 1, p. 7). These allegations give rise to Plaintiff's claim against Defendants Hodge, Lovell, Jane/John Doe #1, and Molenhour for failing to protect Plaintiff from harm by assigning Defendant Berry the task of investigating Plaintiff's known enemies.

There are several problems with this claim. First, the allegations are not only vague, but they are also virtually incomprehensible. With respect to Count 2, the complaint does not plead

"enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A complaint is plausible on its face "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although the Court is obligated to accept factual allegations as true, *see Smith v. Peters*, 631 F.3d 418, 419 (7th Cir. 2011), some factual allegations may be so sketchy or implausible that they fail to provide sufficient notice of a plaintiff's claim. *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009).

With regard to Count 2, the complaint does not indicate when Plaintiff "gave notice . . . of his imminent harm" to the defendants, the nature of the harm faced, the identity of the "known enemies" (either in generic or specific terms), to whom notice was specifically given, or any particular defendant's response. The pleading does not suggest that Plaintiff's request for an investigation was denied by anyone, or even delayed.

Plaintiff's claim instead hinges on the decision to assign Defendant Berry to the investigation. This is because Defendant Berry allegedly has a reputation of mistreating litigious inmates. However, the complaint does not allege that Defendant Berry was a "known enemy," prior to the date that Defendant Berry was assigned to the investigation. And the complaint is utterly lacking in allegations suggesting that Defendants Hodge, Lovell, Jane/John Doe #1, and Molenhour failed to protect Plaintiff from harm, in violation of the Eighth Amendment, or retaliated against him, in violation of the First Amendment, when they responded to Plaintiff's request for an investigation by assigning Defendant Berry to the investigation. Without more, **Count 2** against Defendants Hodge, Lovell, Jane/John Doe #1, and Molenhour fails and shall be dismissed without prejudice.

### Count 3 – Retaliatory Denial of Access to Education

The complaint articulates no viable retaliation claim (**Count 3**) against Defendant Molenhour for failing to place Plaintiff in an educational or vocational program at Lawrence (Doc. 1, p. 7). Plaintiff makes only passing reference to this claim when listing the retaliatory acts that were directed toward him at Lawrence: "not allowing Plaintiff into school by Molenhour" (Doc. 1, p. 7). Plaintiff does not draw any connection between constitutionally protected activity and this allegedly retaliatory conduct. In fact, Plaintiff does not even identify this claim among the seventeen "counts" that he intends to pursue in this action. He mentions it only in his summary of facts.

So that there is no confusion regarding this claim, the Court deems it appropriate to formally dismiss the claim. Bald assertions and unsupported allegations offer insufficient support for a claim, even at the early pleadings stage. Although allegations in a *pro se* complaint are to be liberally construed, courts cannot "accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements." *Twombly*, 550 U.S. at 570; *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 821 (7th Cir. 2009); *Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). The claim of entitlement to relief must cross "the line between possibility and plausibility." *Twombly*, 550 U.S. at 557. Plaintiff's retaliation claim against Defendant Molenhour does not satisfy this standard.

The claim fails for other reasons as well. In the prison context, where an inmate is alleging retaliation, it is not enough to simply state the cause of action. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). The inmate must identify the reasons that retaliation has been taken, as well as "the act or acts claimed to have constituted retaliation," so as to put those charged with the retaliation on notice of the claim(s). *Id*. at 439. The inmate need not plead

facts to establish the claim beyond doubt, but need only provide the bare essentials of the claim, and in a claim for retaliation the reason for the retaliation and the acts taken in an effort to retaliate suffice. *Id.* "[A]n act in retaliation for the exercise of a constitutionally protected right is actionable under Section 1983 even if the act, when taken for different reasons, would have been proper." *Gomez v. Randle*, 680 F.3d 859, 866 (7th Cir. 2012) (quoting *Howland v. Kilquist*, 833 F.2d 639, 644 (7th Cir. 1987)).

The complaint fails to set forth any reason for Defendant Molenhour's retaliatory conduct when discussing this claim. The complaint also includes no chronology of events from which retaliation can be inferred. But beyond this, Plaintiff has no constitutionally protected right to an education while he is in prison. It is well settled that there is no property or liberty interest in attending educational, vocational, or rehabilitative courses while in prison, and institutions are not constitutionally required to provide these programs to inmates. *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000) (prisoner had no Fourteenth Amendment due process claim for being transferred to a prison where he could no longer enroll in programs that might earn him earlier release); *Higgason v. Farley*, 83 F.3d 807, 809 (7th Cir. 1996); *Garza v. Miller*, 688 F.2d 480, 486 (7th Cir. 1982), *cert. denied* 459 U.S. 1150 (1983). For these reasons, **Count 3** shall be dismissed without prejudice against Defendant Molenhour.

### Count 5 – Retaliatory Placement Near Defendant Berry

The complaint also fails to state a claim against any defendant for placing Plaintiff near Defendant Berry (**Count 5**), either under the First Amendment or the Eighth Amendment (Doc. 1, p. 7). No particular defendant is identified in connection with this claim. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a

constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted).

The reason that plaintiffs, even those proceeding *pro se*, for whom the Court is required to liberally construe complaints, *see Haines v. Kerner*, 404 U.S. 519, 520-21 (1972), are required to associate specific defendants with specific claims is so these defendants are put on notice of the claims brought against them and so they can properly answer the complaint. Thus, where a plaintiff has not referred to a defendant in connection with a particular claim, the defendant cannot be said to be adequately put on notice of the claim or be expected to respond to it. Because no defendant is mentioned in connection with this claim, it fails. Accordingly, **Count 5** shall be dismissed without prejudice.

### Count 9 – Practice of Allowing Low Ranking Officials to Escort Inmates

The complaint articulates no viable claim against Defendants Moore or Duncan, based on their policy, custom, or practice of allowing low ranking officers to walk inmates to segregation (**Count 9**) (Doc. 1, p. 13; *see* Count 8 in the complaint). The only allegation offered in support of this claim is that it results in torture because several low ranking officers (i.e., Defendants John Does ##3 and 4) escort inmates in a manner that causes the inmates to faint. Although Plaintiff shall be allowed to proceed with an Eighth Amendment claim against Defendants John Does ##3 and 4 based, in part, on this conduct (*see* Count 8), he cannot proceed with a separate claim against Defendants Moore and Duncan. The complaint does not allege or suggest that Defendant Moore or Duncan participated in this practice. There is no suggestion that either defendant created, condoned, or knew about this practice. *See Lanigan*, 110 F.3d at 477 ("Supervisory liability will be found . . . if the supervisor, with knowledge of the subordinate's conduct, approves of the conduct and the basis for it."). *See also Doyle*, 305 F.3d

at 615.  Accordingly, **Count 9** against Defendants Moore and Duncan shall be dismissed without prejudice.

### Count 11 – Sixth Amendment Claim Only

Although Plaintiff shall be allowed to proceed with that portion of **Count 11** that addresses his First Amendment retaliation claim and his Fourteenth Amendment due process claim, his Sixth Amendment claim based on the denial of his right to confront his accuser at his disciplinary hearing shall be dismissed with prejudice (Doc. 1, pp. 10-11, 13-16; *see* Counts 12, 13, 14, 15, and 16 in the complaint).   A prison disciplinary hearing is not a criminal trial. "Prisoners in this context do not possess Sixth Amendment rights to confront and cross-examine witnesses."  *See Henderson v. United States Parole Comm'n*, 13 F.3d 1073, 1078 (7th Cir. 1994).  "Prison officials must have the necessary discretion to keep the hearing within reasonable limits."  *Wolff v. McDonnell*, 418 U.S. 539, 566 (1974).  This means that they may deny a prisoner's request to call certain witnesses or to introduce certain evidence.   And while Plaintiff cannot proceed with a Sixth Amendment claim for the denial of his right to confront witnesses at his disciplinary hearing, he is not precluded from proceeding with a claim under the Fourteenth Amendment Due Process Clause.   The Seventh Circuit has held that due process requires a case-by-case evaluation of whether live testimony can be provided without threatening institutional goals, *Forbes v. Trigg*, 976 F.2d 308, 317 (7th Cir. 1992), and that prison officials cannot arbitrarily exclude witnesses, *Piggie v. Cotton*, 342 F.3d 660, 666 (7th Cir. 2003).  With this in mind, the **Sixth Amendment** Claim in **Count 11** shall be dismissed with prejudice.

### Count 12 – Claim Against Union

The complaint articulates no viable Eighth Amendment claim against AFSCME Council 31 or Baylor (**Count 12**) (Doc. 1, pp. 9, 16; *see* Count 17 in the complaint).

According to the complaint, these defendants "know[] that policies, practices causes physical harm to inmates (sic)" (Doc. 1, p. 9). This bald assertion, like so many others in the complaint, offers insufficient support for an Eighth Amendment claim against either of these defendants. Certainly, it does not suggest that either defendant exhibited deliberate indifference toward Plaintiff.

It is not even clear whether Plaintiff named a state actor in connection with this claim. "Section 1983 creates a federal remedy against anyone who, under color of state law, deprives 'any citizen of the United States . . . of any rights, privileges, or immunities secured by the Constitution and laws.'" *Planned Parenthood of Indiana, Inc. v. Commissioner of Indiana State Dept. Health*, 699 F.3d 962, 972 (7th Cir. 2012) (quoting 42 U.S.C. § 1983). "In general, a union is not a state actor" that is subject to suit under Section 1983. *See, e.g., Messman v. Helmke*, 133 F.3d 1042, 1044 (7th Cir. 1998). And although private actors may be liable if they conspire with state officials, no allegations suggest that the union conspired with a state actor to violate Plaintiff's Eighth Amendment rights. *Davis v. Union Nat. Bank*, 46 F.3d 24, 26 (7th Cir. 1994). The complaint does not identify Defendant Baylor as a state actor or, for that matter, include any specific allegations against the individual. On many levels, **Count 12** fails to state a claim upon which relief may be granted and shall be dismissed with prejudice.

### Dismissal of John Doe #8

Defendant John Doe #8 is listed in the case caption, but not mentioned in the complaint. He shall be dismissed from this action without prejudice.

### Identification of Unknown Defendants

Plaintiff shall be allowed to proceed with Counts 8 and 10 against Defendants John Does ##3, 4, 5, 6, and 7. However, these parties must be identified with particularity before service of

the complaint can be made on them. Where a prisoner's complaint states specific allegations describing conduct of individual prison staff members sufficient to raise a constitutional claim, but the names of those defendants are not known, the prisoner should have the opportunity to engage in limited discovery to ascertain the identity of those defendants. *Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 832 (7th Cir. 2009). In this case, Warden Hodge shall remain in this action, in his official capacity only, for purposes of responding to discovery aimed at identifying these unknown defendants. Guidelines for discovery will be set by the United States Magistrate Judge. Once the names of Defendant John Does ##3-7 are discovered, Plaintiff shall file a motion to substitute each newly identified defendant in place of the generic designations in the case caption and throughout the complaint.

## Pending Motions

### A.      Motion for Emergency Injunction (Doc. 2)

Plaintiff filed a one-page "motion for emergency injunction," in which he seeks release from segregation at Pontiac, where he is currently incarcerated (Doc. 2). The motion is unsigned. Federal Rule of Civil Procedure 11 requires "[e]very pleading, written motion, and other paper [to] be signed . . . by a party personally if the party is unrepresented." The **Clerk** is hereby **DIRECTED** to **STRIKE** the unsigned motion (Doc. 2). If Plaintiff would like the Court to consider a request for injunctive relief, he should resubmit a properly signed motion. When doing so, Plaintiff shall indicate whether he is seeking a preliminary injunction pursuant to Federal Rule of Civil Procedure 65(a) or a temporary restraining order pursuant to Federal Rule of Civil Procedure 65(b). His reference to an "emergency injunction" is ambiguous. Finally, Plaintiff must submit any exhibits he wishes the Court to consider along with the motion. Although Document 2 refers to "Exhibit C" in the complaint, the Court received no such exhibit

with the complaint or with Document 2. Therefore, Plaintiff must submit "Exhibit C" at the time he refiles the motion, if he would like the Court to consider it.

**B.      Motion to Appoint Counsel (Doc. 3)**

Plaintiff filed a motion to appoint counsel, which is hereby **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for a decision.

**C.      Supplemental Motion for Emergency Injunction (Doc. 7)**

Finally, Plaintiff also filed a "supplemental motion for emergency injunction," in which he requests a list of all inmates who were housed in Building R-4-B on January 12, 2015, or who moved to other locations from that building on the same date. This request is more akin to a discovery request than a request for a temporary restraining order or a preliminary injunction. Warden Hodge is named in this action, in his official capacity, in order to respond to such requests, and guidelines for discovery will be set by the United States Magistrate Judge. The motion is hereby **DENIED**.

### <u>Disposition</u>

**IT IS HEREBY ORDERED** that **COUNTS 1, 2, 3, 5,** and **9** are **DISMISSED** without prejudice for failure to state a claim upon which relief may be granted.   **COUNTS 11 (Sixth Amendment claim only) and 12** are **DISMISSED** with prejudice for the same reason.

**IT IS ALSO ORDERED** that Defendants **HODGE (individual capacity only), PATTERSON, FUNK, STEVENSON, LOVELL, MOORE, DUNCAN, AFSCME COUNCIL 31, BAYLOR, DOE #1, DOE #2** and **DOE #8** are **DISMISSED** without prejudice.

**IT IS FURTHER ORDERED** that with regard to **COUNTS 4, 6, 7, 8, 10,** and **11 (First and Fourteenth Amendment claims only)**, the Clerk of Court shall prepare for Defendants **HODGE (official capacity only), MOLENHOUR, DALLAS, BERRY,**

**STIEBLER, FREEMAN, WHEELER,** and **COOPER**:  (1) Form 5 (Notice of a Lawsuit and Request to Waive Service of a Summons), and (2) Form 6 (Waiver of Service of Summons). The Clerk is **DIRECTED** to mail these forms, a copy of the complaint, and this Memorandum and Order to each Defendant's place of employment as identified by Plaintiff.  If a Defendant fails to sign and return the Waiver of Service of Summons (Form 6) to the Clerk within 30 days from the date the forms were sent, the Clerk shall take appropriate steps to effect formal service on that Defendant, and the Court will require that Defendant to pay the full costs of formal service, to the extent authorized by the Federal Rules of Civil Procedure.

IT IS FURTHER ORDERED that service shall not be made on Defendants John Does ##3, 4, 5, 6, or 7 until such time as Plaintiff has identified them by name in a properly filed motion for substitution.  Plaintiff is **ADVISED** that it is Plaintiff's responsibility to provide the Court with the names and service addresses for these individuals.

IT IS ALSO ORDERED that, with respect to a Defendant who no longer can be found at the work address provided by Plaintiff, the employer shall furnish the Clerk with the Defendant's current work address, or, if not known, the Defendant's last-known address. This information shall be used only for sending the forms as directed above or for formally effecting service.  Any documentation of the address shall be retained only by the Clerk. Address information shall not be maintained in the court file or disclosed by the Clerk.

IT IS ORDERED that Plaintiff shall serve upon Defendants (or upon defense counsel once an appearance is entered), a copy of every pleading or other document submitted for consideration by the Court.  Plaintiff shall include with the original paper to be filed a certificate stating the date on which a true and correct copy of the document was served on Defendants or

counsel.  Any paper received by a district judge or magistrate judge that has not been filed with the Clerk or that fails to include a certificate of service will be disregarded by the Court.

Defendants are **ORDERED** to timely file an appropriate responsive pleading to the complaint and shall not waive filing a reply pursuant to 42 U.S.C. § 1997e(g).

Pursuant to Local Rule 72.1(a)(2), this action is **REFERRED** to United States Magistrate Judge **Stephen C. Williams** for further pre-trial proceedings, including a decision on Plaintiff's motion to appoint counsel (Doc. 3) and expedited discovery aimed at identifying Defendants John Does ##3, 4, 5, 6, and 7.

Further, this entire matter is **REFERRED** to United States Magistrate Judge **Williams** for disposition, as contemplated by Local Rule 72.2(b)(2) and 28 U.S.C. § 636(c), *should all the parties consent to such a referral.*

**IT IS FURTHER ORDERED** that if judgment is rendered against Plaintiff, and the judgment includes the payment of costs under Section 1915, Plaintiff will be required to pay the full amount of the costs, notwithstanding that his application to proceed *in forma pauperis* has been granted. *See* 28 U.S.C. § 1915(f)(2)(A).

Plaintiff is **ADVISED** that at the time application was made under 28 U.S.C. § 1915 for leave to commence this civil action without being required to prepay fees and costs or give security for the same, the applicant and his or her attorney were deemed to have entered into a stipulation that the recovery, if any, secured in the action shall be paid to the Clerk of the Court, who shall pay therefrom all unpaid costs taxed against plaintiff and remit the balance to plaintiff. Local Rule 3.1(c)(1)

Finally, Plaintiff is **ADVISED** that he is under a continuing obligation to keep the Clerk of Court and each opposing party informed of any change in his address; the Court will not

independently investigate his whereabouts.  This shall be done in writing and not later than **7 days** after a transfer or other change in address occurs.  Failure to comply with this order will cause a delay in the transmission of court documents and may result in dismissal of this action for want of prosecution.  *See* FED. R. CIV. P. 41(b).

   **IT IS SO ORDERED.**

   **DATED:  April 9, 2015**

          <u>s/ MICHAEL J. REAGAN</u>
          **U.S. District Judge**